BARBEE, ASSIGNEE, v. HAMILTON, SHERIFF.

1. **Estoppel**: FRAUD BETWEEN HUSBAND AND WIFE IN OBTAINING CREDIT: INCOMPETENT EVIDENCE. A husband's name was Martin O., and his wife's name was Maggie, O., and they both did business under the name of M. O. An attachment against Martin was levied on a stock of goods claimed by Maggie, and she brought her action to recover the goods from the sheriff. Afterwards she assigned to plaintiff, who was substituted as a party to the action. The issue presented by the answer was that, because of the manner in which Maggie permitted the business to be done, she was estopped from claiming the goods, although they in fact belonged to her; or, if such was not the issue, then that the manner in which the business was conducted constituted such a fraud as entitled the creditors of Martin to seize the goods and subject them to the payment of his debts. *Held* that under the issues, as thus stated, evidence of property statements signed by the husband, and furnished to creditors from whom he purchased goods, were not only irrelevant, but that. in the absence of evidence tending to show that the wife had any knowledge of the statements, or that the creditors supposed that they were made by her, or that they were selling goods to her, she could in no manner be bound thereby.

2. **Pleading**: EVIDENCE. Only ultimate facts should be pleaded, and the pleading of evidence irrelevant to the real issues does not make such evidence admissible on the trial.

*Appeal from Carroll Circuit Court.*

WEDNESDAY, DECEMBER 9.

ACTION to recover possession of a stock of goods. The defendant is sheriff, and justified the taking under certain writs of attachment against M. Olson. Trial by jury, judgment for the defendant, and plaintiff appeals.

*Cole, Mc Vey & Clark,* for appellant.

*Bowen & Cloud,* for appellee.

SEEVERS, J.—This action was commencd by Mrs. Maggie Olson, and, as we gather from the instructions, the plaintiff, as her assignee, was substituted as plaintiff. We

**1. ESTOPPEL:** fraud between husband and wife in obtaining credit: incompetent evidence.

also gather from the record that plaintiff's assignor claimed possession of the goods under the name of M. Olson, and under that name, as we understand, she was engaged in business. Her husband's name is Martin Olson, but he also did business under the name of M. Olson. The attachments were issued against M. Olson, but the indebtedness was contracted by Martin Olson. As a matter of convenience, when the plaintiff is mentioned it will be understood that we refer to Maggie Olson. The defendant pleaded in estoppel, and in bar of the action, that the plaintiff permitted her husband, Martin Olson, to use small sums of money furnished by her in conducting business, she giving part of her time to said business, and sharing the profits thereof; that plaintiff's right to said property, if any existed, was a secret and private understanding between herself and husband, and known to but a part of the creditors; that the plaintiff permitted Martin Olson to purchase goods of certain named creditors in her name and upon her credit, and put said goods in the Olson bankrupt store as a part of said stock; that said business was conducted in the name of M. Olson, the name of the plaintiff

and her husband, in order to cheat and defraud their creditors, and that the plaintiff consented to the use of her interest in said stock for this purpose and in this way; that all of the debts upon which said attachments are based are debts of said firm of M. Olson; that said goods were purchased for said firm, received by the said firm, and only partially disposed of by said firm, and that plaintiff's interest therein became and was liable to the payment of said debts; that in each case credit was extended to said M. Olson, or Mrs. M. Olson, in view of the fact that said stock was owned by one or both of them. The defendant did not plead that the plaintiff and her husband were partners, or should be treated as such because of the manner in which they did business, or that they, or either of them, intended to or did perpetrate any fraud on their creditors, unless it can be inferred from what has been stated. Under the issues, as we understand them, it was incumbent on the plaintiff to establish that the goods belonged to her. She introduced evidence which tended to support her claim. It was then incumbent on the defendant to sustain the issue on his part, which we understand to be that, because of the manner in which the plaintiff permitted the business to be done, and because of the manner in which it was done, the plaintiff was estopped from claiming the goods, although they in fact belonged to her; or, if such was not the issue, then that the manner in which the business was conducted constituted such a fraud as would entitle the creditors of Martin Olson to seize the plaintiff's goods and have the proceeds applied to the payment of the debts of Martin Olson.

Such being the issues, the plaintiff introduced Martin Olson as a witness, and the only material thing testified to by him which tended to sustain the issue on the part of the plaintiff was as follows: "I have not, since I went to Nebraska to do business, had any interest in the stock of goods here in Carroll." Upon cross-examination of this witness, the defendant was permitted to identify certain property state-

ments furnished the creditors from whom goods were purchased. The statements were signed by M. Olson; that is to say, they were furnished the creditors by Martin Olson, and signed by him. The property statements were introduced in evidence by the defendants. All of this evidence was ob· jected to by the plaintiff, and we think it was clearly inadmissible, because it had no tendency to sustain, nor was it applicable to, any issue in the case. The evidence may have tended to show that Martin Olson falsely and fraudulently misrepresented the amount of his property, and his ability to pay at the time he purchased the goods, but there was no such issue as this. There is no evidence tending to show that the plaintiff had any knowledge of said statements, or that the creditors supposed they were made by her, or that they were selling her goods; and, besides this, there was no such issue. But, if there was, the statements had no tendency to establish it.

Complaint is made of the instructions, but we deem it unnecessary to consider them, because we think it will be obvious to counsel for the defendant that the answer should be amended, and clear-cut and well-defined issues presented, before this case is retried.

It perhaps is proper to say that counsel for the appellee seem to think, because they set up and pleaded the property 2. PLEADING: statements, therefore they were admissible in evidence. evidence. But this is a mistake. Ultimate facts alone should be pleaded, and not the evidence which tends to prove such facts.

REVERSED.